United States District Court
Southern District of Texas
**ENTERED**
January 31, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| "T.O.," a child, and <br> TERRENCE OUTLEY and <br> DARREZETT CRAIG, parents and <br> next-friends of Plaintiff T.O., <br><br> Plaintiffs, <br><br> V. <br><br> FORT BEND INDEPENDENT SCHOOL <br> DISTRICT, and <br> ANGELA ABBOTT, a teacher, <br><br> Defendants. | § § § § § § § § § § § § § § | <br><br><br><br><br><br> CIVIL ACTION NO. H-19-0331 |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge, upon referral from the District Judge, is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Document No. 14), and Defendants' Motion for Protective Order as to Certain Topics in Plaintiffs' Notice of Rule 39(b)(6) Corporate Deposition and Request for Expedited Ruling (Document No. 23). Having considered the Motions, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint be GRANTED, and Plaintiffs' Complaint be dismissed with prejudice, and the Defendants' Motion for Protective Order be DENIED as MOOT.

I. Background and Allegations

Plaintiffs Terrence Outley and Darrezett Craig filed the instant action on January 30, 2019, as parents and next friends of their minor child, T.O, against the Fort Bend Independent School District ("FBISD") and Angela Abbott ("Abbott"), a teacher employed at FBISD, seeking redress

against Defendant Abbott for violations of federal Constitutional law (Fourth, Fifth, and/or Fourteenth Amendments). They seek redress against Defendant FBISD for statutory violations of the Americans with Disabilities Act, 42 U.S.C. § 12131, "ADA", and Section 504 of the Rehabilitation Act of 1973. The live complaint is Plaintiffs' Amended Complaint. (Document No. 8).

The instant action relates to an incident that occurred on January 31, 2017. At the time, T.O. was a seven-year-old first-grade student in a special education program at FBISD's Hunters Glen Elementary School. (Document No. 8, ¶ 15). According to the Amended Complaint, T.O. has been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder. (Document No. 8, ¶ 16). Because of these disabilities, T.O. had been provided a Behavioral Intervention Plan tailored to address "behavioral problems that are characteristic of his diagnoses." (Document No. 8, § 16). The plan "included use of verbal redirection, a quiet area for him to calm down in, and positive praise for returning to appropriate behavior." (Document No. 8, § 16). T.O. had also been assigned a behavioral support aide. (Document No. 19, ¶ 19). At the time of the incident, Defendant Abbott was employed as a fourth-grade math teacher, and "had no prior contact or experience" with T.O. (Document No. 8, ¶ 17). According to Plaintiffs, Abbott claims to have been trained to properly restrain students. Plaintiffs allege that Abbott "was prejudiced against, and hostile to, students diagnosed with disabilities." (Document No. 8, ¶ 17). Plaintiffs allege that, shortly before noon on January 31, 2017, T.O. "exhibited behaviors characteristic of his diagnoses" and was placed in the hallway outside his classroom with his behavioral aide "until he could calm down and return to his classroom." (Document No. 8, ¶ 19). While walking down the hallway, Abbott came upon T.O. and "apparently angered by T.O.'s disabilities and that he was being treated

in compliance with his Behavior Intervention Plan, . . . took it upon herself to take charge and 'handle the situation.'" *Id.* Abbott "stood in front" of the door, blocking T.O. from "returning to the classroom." When T.O. began to yell that he wanted to return to the classroom, Defendant Abbott "yelled back" at him. When T.O. pulled at the arms of his behavioral aide, Defendant Abbott yelled at him to stop pulling on the aide's arms. According to the Amended Complaint, T.O's behavioral aide told Abbott that the situation was "okay" as "this was "T.O.'s normal behavior when he tries to calm down." T.O. attempted to move Defendant Abbott from the doorway to his classroom by "pushing her leg and hip" and "hitting her right leg one time when she would not budge." According to Plaintiffs, Abbott then "grabbed T.O., threw him to the floor and seized him by his throat/neck, choking and yelling" that he "had hit the wrong one" and "to keep his hands to himself." Abbott did not release T.O. until another witness arrived and T.O.'s behavioral aide asked Defendant Abbott to "release him ... because he needed air and she was holding him the wrong way." Plaintiffs further allege that T.O. had started to "foam at the mouth", and that "after several minutes," Abbott released her "choke hold on T.O.", and that "T.O. calmed down and walked to the nurse's office." (Document No. 8, ¶ 20-25). "The nurse and other school personnel observed bruising and redness on T.O.'s neck." (Document No. 8, ¶ 37). Plaintiffs conclude that Abbott's actions "were malicious, unreasonable, intentional, knowing and/or reckless, were in reckless disregard of T.O.'s rights, and were contrary to maintaining order and an appropriate educational environment." (Document No. 8, ¶ 26). They conclude that she abused her authority as a school teacher and that she should have known that her actions would be regarded by "T.O. as offensive or provocative," and have caused T.O. "substantial injuries, including physical and mental pain and suffering." (Document No. 8, ¶ 27-28). Plaintiffs allege that Abbott's actions "were motivated by her prejudicial animus to his

3

disabilities" and "served no pedagogical, disciplinary or legitimate purpose." (Document No. 8, ¶ 33-34). Plaintiffs contend that Abbott's actions "shock the conscience. She was an adult (47 years old), he was a child (7 years old); she was a teacher who weighed 260 lbs., he was a first grader who weighed 55 lbs, and she claims to have been trained in applying proper restraint techniques but was strangling him. The only disinterested witness to the entire incident reported that the encounter may not have lasted five to ten minutes, but 'it felt like forever'" and that this constituted "an unreasonable seizure." (Document No. 8, ¶ 35-36).

Plaintiffs also allege that FBISD gave Abbott "some paid time off and did not discipline her" and thereby ratified Abbott's actions. (Document No. 8, ¶ 38). According to Plaintiffs, the incident was the "subject of at least three internal investigations, one by its Human Resources office, one by its police department (not an independent outside agency), and one by the campus principal, all of which appear designed to exonerate Defendant Abbott and protect FBISD from liability." (Document No. 8, ¶ 39).

Defendants seek dismissal of all of Plaintiffs' claims. Defendants argue that Plaintiffs' constitutional claims against Abbott fail as a matter of law and are barred by qualified immunity, and that Plaintiffs' ADA and Rehabilitation Act claims against FBISD fail because Plaintiffs fail to allege sufficient facts to state a plausible cause of action for disability discrimination.

II. Applicable law

Fed.R.Civ.P. 12(b)(6) allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 8(a) requires that each claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Because Defendants have filed a Rule 12(b)(6) motion, the undersigned Magistrate Judge construes the

complaint in favor of the Plaintiffs and has accepted as true all well-pleaded facts. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citing *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In addition, plausibility will not be found where the complaint "pleads facts that are merely consistent with a defendant's liability" but "stops short of the line between possibility and plausibility" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). The Supreme Court has further held that plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 556 U.S. at 678-680. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 556 U.S. at 678. Therefore, a Plaintiff must plead specific facts, not merely conclusory allegations to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A court is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To state a § 1983 claim, a Plaintiff must allege that the acts complained of occurred under color of state law and that the complaining parties were deprived of rights guaranteed by the Constitution or laws of the United States. *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). Also a complaint under § 1983 must allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825 (1994). "[W]ithout an underlying constitutional violation, there can be no § 1983 liability imposed on the [defendant]." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997). (emphasis omitted).

Under federal law, public officials acting within the scope of their authority are generally shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009). Put simply, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). Even though qualified immunity is an affirmative defense, a plaintiff "has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). To meet this burden, a plaintiff must allege facts showing that the defendant committed a constitutional violation and that the defendant's actions were objectively unreasonable in light of the clearly established law at the time those actions were taken. *Atteberry v. Nocono Gen'l Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). The Supreme Court has instructed that to be "clearly established," the law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 664, 132 S.Ct. 2088, 2093

6

(2012). "A plaintiff seeking to overcome" a defense of immunity to suit "must plead specific facts that . . . allow the court to draw the reasonable inference that defeat[s]" the defense. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

School children have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment, and abuse by a school employee may violate that right. *Doe v. Taylor I.S.D.*, 15 F.3d 443, 451-52 (5th Cir. 1994), *cert. denied*, 513 U.S. 815 (1994)(analyzing sexual abuse of a student by a teacher, on school premises). The Fifth Circuit has also made clear that "[s]tudents have a constitutional right under the Fourth and Fourteenth Amendments to be free from unreasonable search and seizures while on school premises." *Porter v. Ascension Par. Sch. Bd.*, 393 F.3d 608, 621-22 (5th Cir. 2004). In considering such claims, "[t]he [Supreme] Court [has] indicated that although the Fourth Amendment applies in schools, the nature of those rights is what is appropriate for children in school." *Milligan v. City of Slidell*, 226 F.3d 652, 654-55 (5th Cir. 2000). The Fifth Circuit has also held that "discipline is clearly a legitimate state goal" because "[i]t must be maintained in school classrooms and gymnasiums to create an atmosphere in which students can learn" and that corporal punishment in public schools constitutes a deprivation of substantive due process "when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 875 (5th Cir. 2000)(quoting *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990)). "As long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage." *Id.* at 874. Thus the constitutional right to bodily integrity is not implicated when "the

conduct complained of is corporal punishment–even unreasonably excessive corporal punishment–intended as a disciplinary measure" so long as "the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions." *Id.* (emphasis omitted)(*quoting Fee*, 900 F.2d at 808).

III. Analysis

A. Section 1983 and qualified immunity

Citing *Fee v. Herndon*, Defendants argue that Plaintiffs' Fourth-, Fifth-, and Fourteenth-Amendment claims against Abbott in her individual capacity fail as a matter of law and are barred by qualified immunity because Texas law provides adequate remedies for claims relating to corporal punishment. In *Fee,* the parents of a sixth-grade special-education student commenced a § 1983 action against the school district and educators, asserting that their emotionally-disturbed son, who had become disruptive during classroom instruction, was allegedly beaten by the school's principal to restore discipline. The district court dismissed the section 1983 claims asserted against all defendants, and the Fifth Circuit affirmed, holding that "since Texas has civil and criminal laws in place to proscribe educators from abusing their charges, and further provides adequate post-punishment relief in favor of students, no substantive due process concerns are implicated because no arbitrary state action exists." 900 F.2d at 810. In reaching this conclusion, the Fifth Circuit wrote:

> We have stated that corporal punishment in public schools "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Woodard v. Los Fresnos Ind. School Dist.* 732 F.2d 1243, 1246 (5th Cir. 1984). Thus, *reasonable* punishment is not at odds with the fourteenth amendment and does not constitute arbitrary state action. Consistently with this case law, Texas has authorized educators to impose a *reasonable* measure of corporal punishment upon students

when necessary to maintain school discipline, and the state affords students post-punishment criminal or civil remedies if teachers are unfaithful to this obligation. *Id.* at 808 (emphasis in original).

\*   \*   \*

Thus, we have avoided having student discipline, a matter of public policy, shaped by the individual predilections of federal jurists rather than by state lawmakers and local officials. We find no constitutional warrant to usurp classroom discipline where states, like Texas, have taken affirmative steps to protect their students from overzealous disciplinarians.

*Id.* at 808-809.

Plaintiffs dispute any characterization of the incident as "discipline." According to Plaintiffs, Abbott's actions were a "savage attack" and not school discipline and Abbott is "hoping to take advantage of case law permitting school officials to use excessive force if it is a matter of discipline or punishment. Defendants repeatedly, almost gleefully, remind that the Fifth Circuit has permitted school officials to brutally beat students." (Document No. 16, p. 6). But "fairly characterizing an act as corporal punishment depends on whether the school official intended to discipline the student for the purpose of maintaining order or respect or to cause harm to the student for no legitimate pedagogical purpose." *Flores v. School Board of DeSoto Parish*, 116 Fed. Appx. 504, 511 (5th Cir. 2004)(stating that "[t]his circuit does not permit public school students to bring claims for excessive corporal punishment as substantive due process violations under § 1983 if the State provides an adequate remedy"). Although Plaintiffs conclude that Abbott's actions were "malicious, unreasonable, intentional, knowing and/or reckless," and they speculate that her actions were "motivated by her prejudicial animus to his disabilities," they acknowledge in the Amended Complaint that Abbott "had no prior contact or experience with T.O." when she encountered the disturbance in a pedagogical setting. It is undisputed that T.O's behavioral aide was attempting to carry out his behavioral education plan by keeping him out of the classroom after an outburst; that

9

T.O. was acting in a physically violent manner toward her and attempting to return to the classroom from which he had been removed; that Abbott first passively blocked T.O. from re-entering the classroom; and that she then resorted to physical restraint only after T.O. responded violently to her by pushing and hitting her in his attempt to return to the classroom. Under these circumstances, it cannot be disputed that Abbott's actions were taken in pursuit of a legitimate pedagogical purpose, whether another person may or may not find the amount of force she used in trying to restrain a violent, flailing child to be reasonable. *See Serafin v. School of Excellence in Educ.*, 252 Fed. Appx. 684, 685-686 (5th Cir. 2007)(reiterating that "[i]t is well settled in this Circuit that corporal punishment of public school students is only a deprivation of substantive due process rights 'when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning[,]'" and that "[a]s a matter of law, punishment is not arbitrary so long as the state affords local remedies for the alleged offensive conduct")(citing *Fee* and *Moore*); *Marquez v. Garnett*, 567 Fed. Appx. 214, 217 (5th Cir. 2014)(where teacher was alleged to have "cursed and yelled" at severely autistic, non-verbal, physically disabled student, and to have "grabbed him from behind in a forceful and frightening manner, shoved him to the side and repeatedly kicked [him]" because he "was sliding [teacher's] compact disc across a table during class time, nonetheless finding that "the setting is pedagogical, and [the student's] action was unwarranted [thus] the inference must be that Garnett acted to discipline C.M., even if she may have overreacted.").

Plaintiffs' statements asserting other incidents are bald and conclusory, and fail to provide specific and particular allegations to overcome Abbott's 12(b)(6) motion to dismiss on the grounds of qualified immunity. "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief'" and if Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 566 U.S. at 678. Put simply, the allegations are not sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and are "enough to raise a right to relief above the speculative level." *Turner v. Lieutenant Driver*, 848 F.3d 678, 684-85 (5th Cir. 2017). Because Plaintiffs' Amended Complaint alleges excessive corporal punishment or unlawful seizure, and, because Texas provides "adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions," Plaintiffs' claims are subject to dismissal under binding Fifth-Circuit precedent. *See Moore*, 233 F.3d at 875. To the extent that Plaintiffs urge this Court to disregard the Fifth Circuit's approach to school discipline, and not follow *Fee* and its progeny, *Fee* is binding on this Court.

    B.   Claims under the ADA and Rehabilitation Act

Plaintiffs have also asserted violations of the ADA and Section 504 of the Rehabilitation Act ("RA") by FBISD. Section 504 of the RA provides, in pertinent part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Individuals may enforce Title II of the ADA and § 504 of the RA through a private right of action. *Frame v. City of*

*Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). "The remedies, procedures and rights available under the RA are also accessible under the ADA." *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002)(internal citations omitted). To establish a cause of action under the either the ADA or § 504 of the RA, a plaintiff must show the following:(1) the person is a qualified individual within the meaning of the ADA; (2) the person is being excluded from participation in, or being denied the benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination is by reason of a disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). To recover damages, a plaintiff must prove that the discrimination was intentional. *Delano-Pyle v. Victoria City,* 302 F.3d 567, 574 (5th Cir. 2002). Neither the ADA nor § 504 create "general tort liability for educational malpractice." *D.A. ex rel. Latasha A. V. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010). In the school context, a plaintiff must sufficiently plead facts inferring that "a school district has *refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992 (5th Cir. 2014)(emphasis in original); *Campbell v. Lamar Inst. of* Tech., 842 F.3d 375, 380 (5th Cir. 2016)("When the record is 'devoid of evidence of malice, ill-will, or efforts . . . to impede' a disabled student's progress, summary judgment must be granted in favor of the university."). To substantiate a cause of action for intentional discrimination under § 504, plaintiff must allege "facts creating an inference of professional bad faith or gross misjudgment." *C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist.*, 641 F.App'x 423, 426 (5th Cir. 2016). "Congress did not intend § 504 or ADA claims to create general tort liability for the government." *Estate of A.R. v. Muzyka*, 543 F.App'x 363, 365 (5th Cir. 2013).

"So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals," school officials are not liable under the ADA or § 504. *Reed v. Kerens Indep. School Dist.*, No. 3:16-cv-1228-BH, 2017 WL 2463275, at *13 (N.D. Tex. June 6, 2017).

Defendants move to dismiss Plaintiffs' ADA and RA claims against FBISD because Plaintiffs have failed to state a claim for disability discrimination. Plaintiffs' § 504 and ADA claims are based on allegations that other children besides T.O., including a student with autism and a student in the 6th grade, reported that they had been choked by FBISD teachers or other staff, but that FBISD did not discipline Abbott and gave her paid time off. They also complain and that the incident was the subject of at least three internal investigations, which "appear designed to exonerate Defendant Abbott and protect FBISD from liability." Defendants point to the absence in the Amended Complaint of any allegations that T.O. was excluded from participating in, or was denied the benefits of, the District's services, programs, or activities based on his disabilities. Defendant FBISD further argues that, while the Amended Complaint alleges that Abbott was "angered by T.O.'s disabilities and that he was being treated in compliance with his Behavior Intervention Plan, there are no facts to support the allegation." In response, Plaintiffs argue that the allegations show that the attack on T.O. was the result of anger and prejudicial animus by Defendant Abbott to seeing T.O.'s disability related behavior and application of a behavior intervention plan, and her "savage behavior" was on account of T.O.'s disabilities. (Document No. 16, p. 9-10).

Plaintiffs have failed to allege sufficient facts that create an inference of professional bad faith or gross misjudgment as required to establish their ADA and § 504 claims claim as a matter of law. At most, the allegations give rise to an educational malpractice claim, which as discussed

13

above, is not actionable under the ADA or § 504 of the RA. Plaintiffs have not alleged that T.O. was removed from the class room and was in the hallway because the school was discriminating against him and disciplining him based on his disability. Rather, Plaintiffs' Amended Complaint alleges his removal to the hallway was consistent with his educational plan. Plaintiffs admit that Abbott had no prior contact with T.O. Plaintiffs have not alleged that FBISD discriminated against T.O. by disciplining him for his behavior-related disability. Even if T.O.'s disability contributed to his behavior in the hallway on the date of the incident, the allegations fall short of showing discriminatory intent to state a plausible ADA claim or § 504 claim.

IV. Conclusion and Recommendation

Based on the reasons set forth above, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss (Document No. 14) be GRANTED, and that Defendants' Motion for Protective Order (Document No. 23) be DENIED as Moot.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Serv. Auto Assn,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 29th day of January, 2020

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE